USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/05/2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                                          :
VICTOR DJANGMAH,                                          :
                                                          :
                              Plaintiff,                  :          08 Civ. 4027 (KPF)
                    v.                                    :
                                                          :          OPINION AND ORDER
MICHAEL FALCIONE,                                         :
                                                          :
                              Defendant.                  :
                                                          :
---------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

        Pending before the Court are several motions *in limine* regarding the introduction of

certain items of evidence at the upcoming trial in this matter, which trial is scheduled to begin on

Tuesday, December 10, 2013.  With one exception discussed at the end of this Opinion, those

motions are resolved herein.

## FACTUAL BACKGROUND

        By way of background, this action under 42 U.S.C. § 1983 for excessive force arises

from Plaintiff's traffic stop and subsequent arrest on December 12, 2007.  Plaintiff's Complaint

was filed on April 29, 2008.  (Dkt. #2).  Plaintiff filed a First Amended Complaint on April 22,

2009  (Dkt. #18), and a Second Amended Complaint on July 24, 2012 (Dkt. #71, 83).

        The initial pretrial conference in the matter took place on January 21, 2010.  On June 11,

2010, the Honorable Frank Maas, United States Magistrate Judge,[1] held a conference with the

parties at which he instructed Plaintiff, as memorialized in a written order, to accompany

Defendant's counsel to her office and sign medical releases and authorizations so that discovery

_____

[1]     Magistrate Judge Maas was at that time supervising general pretrial matters in this action under an Order of
        Reference from the Honorable Paul A. Crotty, the United States District Judge from whom the undersigned
        received this case in reassignment on June 25, 2013.

could proceed.  (Dkt. #36).  Plaintiff ultimately provided those releases, according to Defendant, on or about June 25, 2010.  (Dkt. #37 at 1).

Discovery eventually closed on January 13, 2012, after Defendant deposed an eyewitness to the traffic stop and arrest.  (Dkt. #63).  Thereafter, in December 2012, Defendant filed a renewed motion for summary judgment.  (Dkt. #77, 78, 81, 82).  On January 18, 2013, Magistrate Judge Maas issued a Report and Recommendation regarding Defendant's motion for summary judgment, granting that motion with respect to all parties originally named except for the Defendant here, Michael Falcione, and with respect to all claims except Plaintiff's excessive force claim, the one remaining issue in this litigation.  (Dkt. #84).  The Court adopted that Report and Recommendation in its entirety by Order dated March 25, 2013.  (Dkt. #89).

On April 16, 2013, Magistrate Judge Maas ordered the parties to submit a Joint Pretrial Order, proposed voir dire questions, and requests to charge to the Court by May 17, 2013.  (Dkt. #90).  Defendant timely filed his responsive documents, after seeking several extensions, on June 4, 2013.  (Dkt. #97, 98, 99).  Plaintiff did not collaborate on Defendant's pretrial order.  The parties appeared for a conference on August 29, 2013, where the Court ordered Plaintiff to submit a pretrial order to the Court and to Defendant by October 4, 2013.  (Dkt. #107).  Plaintiff ultimately filed his pretrial order, accompanied by medical records from NewBridge Services, on October 23, 2013.  (Dkt. #110).

The parties appeared before the Court for a pretrial conference on October 31, 2013.  (*See* Dkt. #112).  At that time, both parties made a number of motions *in limine* with respect to introducing certain items of evidence.  The Court resolved several of these motions by oral order and deferred judgment on the remainder in order to obtain clarification regarding the nature of the evidence at issue and the parties' conduct during discovery.

The parties returned for a final pretrial conference on December 3, 2013.  (*See* Dkt. #116).  At this conference, the Court resolved several of the pending evidentiary motions and was confronted with several brand new applications by both parties.

## DISCUSSION

It is unfortunate, after the remarkable length of time this litigation has taken to reach this point, that new evidence should appear and new objections to evidence should be made a week before trial commences.  Nonetheless the Court now confronts the following remaining motions *in limine*:

1) Plaintiff's motion to introduce medical records regarding his treatment at NewBridge Services in New Jersey, and Defendant's cross-motion to exclude these records;

2) Plaintiff's motion to introduce medical records regarding his treatment at Harlingen Medical Center in Texas, and Defendant's cross-motion to exclude these records;

3) Defendant's motion to prohibit Plaintiff from cross-examining Defendant regarding a 2008 episode involving the use of force; and

4) Defendant's motion to cross-examine two of Plaintiff's witnesses regarding their past criminal convictions.

The Court is mindful of its obligation to accommodate Plaintiff's *pro se* status and throughout this Order — as throughout the last several months — has endeavored to make every allowance possible, including here considering arguments that someone trained in the law might make in support of Plaintiff's motions and in opposition to Defendant's motions.  For the reasons set out in the remainder of this Opinion, Plaintiff's motion to introduce records from NewBridge Services is denied, and Defendant's cross-motion to exclude these records is granted; Plaintiff's motion to introduce medical records from Harlingen Medical Center is denied, and Defendant's cross-motion to exclude these records is granted; Defendant's motion to prohibit Plaintiff from cross-examining Defendant regarding a specific episode of use of force is granted; and

Defendant's motion to cross-examine Ivan Eli regarding his past criminal convictions is granted in part and denied in part. The Court requires additional information before it can resolve Defendant's motion to cross-examine Davon Chambers.

## A.     The Newbridge Records Are Excluded

First Plaintiff seeks to introduce the records of his treatment at NewBridge Services, which treatment (according to the records) began on October 15, 2010, and lasted for at least six months thereafter. This motion is denied for two reasons: (1) these records were never produced during discovery; and (2) these records are hearsay and Plaintiff cannot satisfy any exception to the rule against hearsay.

### 1.   The Newbridge Records Were Not Produced

Defendant argues that Plaintiff never provided a release for this medical facility; that these records were not produced during discovery; and that Defendant first saw these records when they were included with Plaintiff's pretrial order on October 23, 2013. In consequence, Defendant argues, Plaintiff should be barred from introducing the NewBridge medical records. (10/31/13 Tr. at 19:2-7).

Plaintiff has offered two different, and somewhat contradictory, responses. At the October 31, 2013 conference, Plaintiff contended that he had provided Defendant with a release for the NewBridge facility during discovery and that these records were included in the filings made in connection with the motion for summary judgment. (*Id.* at 19:16-21; *see also id.* at 20:15-18 ("THE COURT: So are you saying, sir, that you produced records to them before 2011? MR. DJANGMAH: Yes, it was part of my release. My release, my medical release."); *id.* at 21:4-9 ("THE COURT: You signed a release for Newbridge Services? MR. DJANGMAH: Yes, I did, with the prior corporation counsel. I think at one point during some of the documents

4

I was sending to Ms. Krasnow, I did send them in as I got them from the institution as well."); *id.* at 24:23-25 ("So they had me sign the release right over there that same day and then they faxed it to them behind me — Newbridge faxed it directly to the corporation counsel from there.")).

This account, however, is not borne out by the record in this case. The Court has reviewed the papers Plaintiff filed in opposition to Defendant's motion for summary judgment and the disputed NewBridge records are not among them. (Dkt. #72). In addition, though certainly not dispositive, Defendant's correspondence with Magistrate Judge Maas lists seven different medical facilities for which Plaintiff executed medical releases, none of which is NewBridge Services. (*See* Dkt. #37 at 2, #39 at 2).

At the conference held on December 3, 2013, Plaintiff advanced a different position. He produced a physical copy of an executed authorization to NewBridge Services to release medical information and argued that this release proved Defendant had received Plaintiff's NewBridge records. The release in question is dated May 6, 2013. This argument is inconsistent with Plaintiff's position at the October 31, 2013 conference that Defendant had received the disputed records either at some time prior to 2011 or during the summary judgment stage (which concluded in March 2013). Perhaps more importantly, the release in question identifies Plaintiff himself, and not Defendant's counsel or any representative thereof, as the "[p]erson authorized to receive information" from the facility.[2]

To be sure, Plaintiff could have provided these documents to Defendant directly after obtaining them himself from the facility. Even then, however, Defendant received the records, at the earliest, in May of this year, 16 months after the close of discovery. The date of the release is

---

[2]     What this means is that there is no evidence that Plaintiff ever authorized NewBridge to produce documents directly to Defendant. This accords with the Court's telephonic discussions with a NewBridge representative, who confirmed that the facility had received no authorization from Plaintiff to transmit his medical records to Defendant or Defendant's counsel, and that the facility had no record of ever having transmitted Plaintiff's records to Defendant or Defendant's counsel.

also significant: Magistrate Judge Maas' original order of April 16, 2013, instructed the parties to file a joint pretrial order by May 17, 2013, less than two weeks after Plaintiff authorized NewBridge to release medical records into his own custody.  The records in question then emerged in this litigation as an attachment to Plaintiff's pretrial order submission.  Given these facts, it seems much likelier that Plaintiff obtained these records to submit with his pretrial order and never produced them to Defendant, ultimately filing them with his pretrial submission on October 23, 2013.

On June 11, 2010, Magistrate Judge Maas ordered Plaintiff to provide medical releases to Defendant.  (Dkt. #36).  According to Defendant, Plaintiff provided the last such release on October 1, 2010.  (Dkt. #39 at 2).  Two weeks after providing the last release, according to the disputed records themselves, Plaintiff began receiving treatment from NewBridge Services.  Yet, by Plaintiff's own account, he only obtained a release from that facility on May 13, 2013, more than 31 months later.

In *Ginns* v. *Towle*, the Second Circuit confronted a medical expert who was permitted to testify at trial in support of a plaintiff in a personal injury case though the defendant objected that he had never received a copy of that expert's medical report.  361 F.2d 798, 800 (2d Cir. 1966).  The plaintiff's counsel responded that a copy had been mailed to the defense counsel.  *Id.*  The trial judge "accepted both statements and concluded that the report went astray, for some unknown reason."  *Id.*  The Second Circuit, rejecting this conclusion of the trial court, observed that "the basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid the very kind of surprise practiced upon the defense in this case."  *Id.* at 801.

Permitting the introduction of these medical records would result in equally unacceptable surprise to Defendant here.  For this reason alone, the records would be excluded.  However, an equally persuasive additional justification exists.  Even had the records been produced as they should have been, the records are plainly hearsay, and Plaintiff cannot satisfy the requirements of any exception to the rule against hearsay.

### 2.  The Newbridge Records Contain Hearsay

To be admitted at trial, evidence must be relevant, authenticated, and admissible under the Federal Rules of Evidence.  *See, e.g.*, Fed. R. Evid. 102, 401, 402, 901.  As relevant to the instant motions, evidence may not be admitted at trial when it falls into the category of "hearsay," defined as "a statement that (1) the declarant did not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801.  As the Supreme Court of the United States has explained, the rule against hearsay is

> grounded in the notion that untrustworthy evidence should not be presented to the triers of fact.  Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Chambers* v. *Mississippi*, 410 U.S. 284, 298 (1973).  In other words, hearsay evidence cannot be put before the jury because, by its very nature, the jury cannot evaluate whether the hearsay evidence is reliable.  "A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination."  *Id.* at 298-99.

In short, the rule against hearsay is fundamentally designed to ensure that only reliable evidence goes in front of the jury; the exceptions to the rule permit the introduction of evidence the reliability of which can be assured through some other means.

Introducing evidence — both in general and especially when seeking to evade the rule against hearsay — requires laying a "foundation" for its admissibility. *Phoenix Associates III* v. *Stone*, 60 F.3d 95, 101 (2d Cir. 1995). In other words, the party seeking to introduce evidence normally barred by the rule against hearsay must prove by witness testimony (or, in certain cases, written certification) that the evidence meets the requirements of the particular hearsay exception or exceptions arguably at issue. *See, e.g.*, *Raphaely Int'l, Inc.* v. *Waterman S.S. Corp.*, 972 F.2d 498, 502 (2d Cir. 1992) (discussing the foundation requirements of the business record exception to the rule against hearsay).

The medical records Plaintiff seeks to introduce are plainly hearsay. They contain out-of-court statements made by Plaintiff to a NewBridge professional, intended to be introduced to prove the state of Plaintiff's medical condition during his treatment. The records may nonetheless be admissible if they satisfy one of the hearsay exceptions. Two exceptions under the Federal Rules of Evidence are implicated here: the exception for medical records, as expressed in Rule 803(4); and the exception for records kept in the normal course of business, as expressed in Rule 803(6).

Rule 803(4) permits introduction of a statement, otherwise hearsay, that "(A) is made for — and is reasonably pertinent to — medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). The records in question are ostensibly medical records and their content does seem to reflect Plaintiff's statements regarding medical conditions made for medical

treatment.  However, introducing apparent hearsay evidence under the medical records exception

requires the party seeking introduction to "lay a foundation" — that is, to demonstrate that the

records at issue are what they seem to be and that they satisfy the requirements of the hearsay

exception.  *See, e.g.*, *O'Gee* v. *Dobbs Houses, Inc.*, 570 F.2d 1084, 1089 (2d Cir. 1978) ("Rule

803(4) clearly permits the admission into evidence of what O'Gee told Dr. Koven about her

condition, so long as it was relied on by Dr. Koven in formulating his opinion — a foundation

that was properly laid."); *see also, e.g.*, *United States* v. *Charley*, 189 F.3d 1251, 1263 (10th Cir.

1999) ("Treating professionals may relate statements made to them by the alleged victims, as

long as the statements were made for the purposes of diagnosis or treatment. Such statements are

admissible under Fed. R. Evid. 803(4), as exceptions to the hearsay rule, provided a proper

foundation is laid."); *United States* v. *Mednansky*, No. 10 Cv. 1307 (LAB) (BGS), 2011 WL

844956, at *4 (S.D. Cal. Mar. 8, 2011), *motion to certify appeal denied*, No. 10 Cv. 1307 (LAB)

(BGS), 2011 WL 1750209, at *4 (S.D. Cal. May 6, 2011) ("To the degree [disputed medical

records] might be admissible under Fed. R. Evid. 803(4) if foundation were provided…."); *Doe*

v. *Tsai*, Civ. 08-1198 (DWF) (AJB), 2010 WL 2605970, at *17 (D. Minn. June 22, 2010), *aff'd*

*sub nom. Doe ex rel. Thomas* v. *Tsai*, 648 F.3d 584 (8th Cir. 2011) ("For example, assuming

proper foundation, the medical records would fall within Rule 803(4), which covers 'statements

for purposes of medical diagnosis and treatment.'" (quoting Fed. R. Evid. 803(4)).

Rule 803(6) has a similar requirement, expressed in the text of the rule itself.  Rule

803(6) permits introduction of a

> record of an act, event, condition, opinion, or diagnosis if: (A) the
> record was made at or near the time by — or from information
> transmitted by — someone with knowledge; (B) the record was
> kept in the course of a regularly conducted activity of a business,
> organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  "'Medical records ... can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated.'"  *Shea* v. *Royal Enterprises, Inc.*, No. 09 Civ. 8709 (THK), 2011 WL 2436709, at *11 (S.D.N.Y. June 16, 2011) (quoting *Hodges* v. *Keane,* 886 F. Supp. 352, 356 (S.D.N.Y. 1995)); *see also United States* v. *Sackett,* 598 F.2d 739 (2d Cir. 1979) (holding that hospital records as admissible if they "were kept in the course of the regularly conducted business activity of the hospital").

As with Rule 803(4), the introducing party must lay a foundation to introduce hearsay evidence under Rule 803(6); unlike Rule 803(4), however, Rule 803(6) explicitly requires that this foundation be laid by a "custodian" or "qualified witness," if testimonial, or by a formal certification by the record's custodian.  *See, e.g.*, *Sanders* v. *Ritz-Carlton Hotel Co., LLC*, No. 05 Civ. 6385 (PKL), 2008 WL 4155635, at *2 (S.D.N.Y. Sept. 9, 2008) ("Presuming such foundation is established, the hospital records may be admissible under the business records exception to the hearsay rule.")

Here, Plaintiff cannot lay a foundation sufficient to satisfy the requirements of the medical records exception under Rule 803(4) or the business records exception under Rule 803(6) for the simple reason that no witness he intends to call could possibly establish that the records are what they appear to be or that they conform to the requirements of either exception. As memorialized in Plaintiff's pretrial order (Dkt. #110), Plaintiff proposed to introduce testimony from himself, several members of his family, and two eyewitnesses to the scene.  The

Court has endeavored both at the conference of October 31, 2013 (10/31/13 Tr. at 25:11-26:4), and at great length at the conference of December 3, 2013, to make clear to Plaintiff the need to demonstrate that these records satisfy the requirements of an exception to the rule against hearsay.  At no time, in any submission or in any conference with the Court, has Plaintiff suggested that he intends to provide testimony to confirm the records are medical records containing statements made for medical diagnosis and treatment, or that the records are kept in the ordinary course of business.  Nor has Plaintiff made any provision to obtain a certification to satisfy Rule 803(6)(D).

Even were Plaintiff prepared to provide such foundational testimony, however, the fact remains, as discussed above, that these records simply were not produced to Defendant at any time before Plaintiff filed his pretrial order on October 23, 2013.  In sum, two independent obstacles bar Plaintiff from introducing the NewBridge Services records at trial.  Accordingly, Plaintiff's motion *in limine* to introduce these records is denied, and Defendant's motion to exclude them is granted.

**B.      The Harlingen Records Are Excluded**

Plaintiff also seeks to introduce records of his treatment at Harlingen Medical Center in Harlingen, Texas, from September 3, 2008, and December 30, 2008.  This motion is denied, for two reasons: (1) they are not relevant to any fact or claim at issue in this action; and (2) they are hearsay and Plaintiff cannot satisfy the requirements of any exception to the rule against hearsay.

### 1.   The Harlingen Records Are Irrelevant

Plaintiff applied to admit these records for the first time at the final pretrial conference on December 3, 2013.  He contends they are vital to his case because they represent the first time he obtained medical treatment for the injuries he alleges he sustained in the traffic stop and arrest on December 12, 2007.  The medical records from his treatment the night of the incident at St. Barnabas Hospital, he argues, do not reflect his true condition because he received rushed, superficial treatment.

Defendant plans to introduce both the records of Plaintiff's treatment at St. Barnabas Hospital and the testimony of Dr. Narasingha Rao, Plaintiff's treating physician on the night of the incident.  As a result, irrespective of this evidentiary dispute, Plaintiff will have the opportunity to question the reliability and completeness of the medical records from December 12, 2007.  The Harlingen records, however, will not be introduced.  Plaintiff has failed to demonstrate that they are relevant.

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. There is only one fact at issue in this action: whether excessive force was used against Plaintiff on December 12, 2007.  These records — for September 3, 2008, and December 30, 2008 — memorialize medical treatment Plaintiff received eight months and one year, respectively, after the incident giving rise to Plaintiff's claim here.  Records so removed in time from the episode in question could hypothetically have sufficient relevance to permit introduction at trial, but these records do not. Nothing in the records indicates that Plaintiff reported, or physicians conducted testing or treatment related to, a physical altercation that had occurred eight or twelve months in the past.

The December 30, 2008 record is without question unrelated to the incident giving rise to this action.  The December 30, 2008 "Presenting complaint" section records that Plaintiff himself, identified as "Patient," informed Emergency Department personnel that he was experiencing "headache, jaw pain, left knee pain[, and] abdominal pain" after being "involved in [a] physical altercation *at [the] ICE facility*" (emphasis added),[3] and that he complained "of pain in right jaw and left jaw"; the "Clinical Impression" section of the December 30, 2008 record indicates that the Emergency Department personnel observed a contusion on Plaintiff's jaw. There is simply no way to read the December 30, 2008 record as even potentially related to the traffic stop and arrest for which Plaintiff now brings suit.

The September 3, 2008 record also appears irrelevant to this action, and thus inadmissible.  The record indicates, under the heading "Presenting complaint," that Plaintiff himself, identified as "Patient," informed Emergency Department personnel that he had "had to be forcibly pushed to [the] ground and handcuffs applie[d]," after which he "hurt[] everywhere." This language strongly suggests that Plaintiff was hospitalized on September 3, 2008, for a recent episode, and not for an episode then eight months in the past.[4]  That being said, it may be possible to read this complaint as referring to Plaintiff's allegations regarding his treatment by

---

[3]     At the time, Plaintiff was being held at an Immigration and Customs Enforcement facility in Harlingen, Texas.

[4]     The "Presenting complaint" section of the September 3, 2008 record also indicates that the EMS technician accompanying Plaintiff informed Emergency Department personnel that Plaintiff had complained of "pain to head, face, hands, back and legs *after [an] altercation last night*" (emphasis added).  Two pages later, a section labeled "Corrections" repeats and strikes through the EMS technician's comment.  It is not clear whether this correction indicates that the EMS technician's comment should be regarded as deleted from the "Presenting complaint" section, if it was added into the "Presenting complaint" section at a later time, or whether it has some other meaning.  In consequence, the Court cannot treat the comment as an undifferentiated piece of evidence regarding the relevance of the Harlingen records.  Nonetheless, the EMS technician's comment supports the natural reading of Plaintiff's own report to Emergency Department personnel as recorded in the "Presenting complaint" section: that Plaintiff had had a altercation resulting in handcuffing shortly before September 3, 2008, and was hospitalized complaining of pain associated with that altercation.  Indeed, were the Court to accept the EMS technician's comment without question, no reading of the record could sustain a finding of relevance to this action.

Defendant on December 12, 2007; among other things, he alleges he was pushed to the ground and handcuffed on the night in question.  In consequence, were the Court compelled to make a relevancy determination, it is possible that the September 3, 2008 record might enter evidence.

### 2.   The Harlingen Records Contain Hearsay

However, even were either or both records relevant, an equal and independent reason exists to exclude both records from evidence at trial: they are hearsay and Plaintiff cannot satisfy the requirements of any hearsay exception.  As with the NewBridge Services records discussed above, the Harlingen records could be admitted into evidence if Plaintiff were able to satisfy the requirements of the medical records exception at Rule 803(4) or the business records exception at Rule 803(6).  He cannot, for the same reasons discussed above.  Plaintiff has made no provision to call any witness to establish the *bona fides* of these records: neither his family members nor the eyewitnesses to the incident in question could possibly demonstrate to the Court that the records either contain statements made for the purpose of medical diagnosis and treatment, or that they were made by someone with knowledge in the normal course of business and a normal practice of the hospital.  Nor has Plaintiff made any provision to obtain a certification to satisfy Rule 803(6)(D).

The Harlingen records are impermissible hearsay; one record is certainly irrelevant, and the other one is likely irrelevant.  Accordingly, Plaintiff's motion to introduce these records is denied, and Defendant's cross-motion to exclude is granted.[5]

---

[5]     To be clear, these rulings concern the admissibility of the medical records that Plaintiff only recently sought to admit.  To the extent that a particular witness at trial has firsthand knowledge of information concerned in those records, the witness may be permitted to testify to that information.

**C.     Plaintiff May Not Cross-Examine Defendant Regarding the 2008 Episode of the Use of Force**

In December 2008, Defendant took part in an episode involving the use of deadly force. Plaintiff advised the Court at the final pretrial conference on December 3, 2013, that he intended to cross-examine Defendant regarding this incident. When asked why this line of cross-examination was relevant, Plaintiff responded, in substance, that he (Plaintiff) could just as easily have been the victim of deadly force at Defendant's hands.

Rule 404(b) of the Federal Rules of Evidence governs the introduction of "crimes, wrongs, or other acts" as evidence at trial. It reads:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> (B) do so before trial — or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b). Permissible uses for such evidence exist and the Second Circuit has established an "inclusionary" approach to such evidence. But "wrongful act evidence may never "be admitted merely to show the defendant's propensity to commit the act in question." *Berkovich* v. *Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991).

In *Berkovich*, the Second Circuit confronted a number of issues relating to a plaintiff's § 1983 suit for, among other things, assault and battery against a police officer who arrested him. *Id.* at 1021. One of the plaintiff's objections in *Berkovich* focused on the district court's exclusion from evidence at trial of all reference to prior civilian complaints against the arresting

officer.  *Id.* at 1022.  The plaintiff presented three justifications for including these prior complaints: first, that they established the officer's "sadistic, malicious, aggravated state of mind"; second, that they established a "pattern of conduct"; and third, that they established a motive for the officer's conduct.  *Id.* at 1022-23 (internal quotation marks omitted).  The Circuit Court rejected all three arguments.  The first, the panel held, was "no more than a veiled attempt to do what Rule 404(b) expressly prohibits — introducing evidence of bad acts to show the defendant's propensity to commit such acts."  *Id.* at 1022.  The second could only prevail if the acts in question shared "'unusual characteristics' with the act charged or represent[ed] a 'unique scheme,'" which the complaints at issue did not.  *Id.* at 1022-23 (quoting *United States* v. *Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)).  And the third argument, though not barred by Rule 404(b), was unduly prejudicial and so prohibited by Rule 403.  *Id.* at 1023.

Plaintiff's remarks at the December 3, 2013 conference in explanation of his application to conduct this line of cross-examination admit of at least two possible interpretations.  The first is that Plaintiff hopes to prove that Defendant was more likely to have used excessive force against Plaintiff because he used deadly force in an unrelated incident a year later.  The incident at issue here would clearly be inadmissible on this basis, just as in *Berkovich*; it is "no more than a veiled attempt to do what Rule 404(b) expressly prohibits — introducing evidence of bad acts to show the defendant's propensity to commit such acts."  *Id.* at 1022.

The alternative construction is that Plaintiff seeks to establish a pattern of behavior in which Defendant routinely uses excessive force in a particular circumstance. For such a theory to justify admitting this evidence, the incident in question would have to share "unusual characteristics" with the episode giving rise to this litigation.  *Benedetto*, 571 F.2d at 1249.  The

Second Circuit, quoting a major treatise on evidence law, has explained that the standard of "unusual characteristics" allows evidence of wrongful acts to be admitted in order to

> prove other like [acts] by the [defendant] so nearly identical in method as to earmark them as the handiwork of the [defendant]. Here much more is demanded than the mere repeated commission of [acts] of the same class…. The device used must be so unusual and distinctive as to be like a signature.

*Id.* (quoting McCormick, EVIDENCE § 190, at 449 (2d ed. 1972) (footnotes omitted in original)). No such distinctive similarity exists between the 2008 incident and Plaintiff's 2007 arrest.[6]  The 2008 incident involved police officers dispatched to the scene of dispute at which, they were warned, individuals wielding firearms had been observed; on arrival, they confronted a man armed with a bat and a wooden stick who approached on officers despite orders to drop the items he was carrying.  This brief sketch of the facts indicates few, if any, similarities between the 2008 episode and Plaintiff's arrest.  Among other differences, Plaintiff has never alleged that Defendant menaced him with any weapon or used a weapon against him; Defendant does not contend that Plaintiff was armed; Plaintiff's arrest arose out of a legitimate traffic stop, not a dispute prompting a police dispatch.  Of course Defendant exercised force in both incidents.  But the use of force alone cannot be enough to rise to the level of a *modus operandi* or regular pattern of behavior so as to justify permitting this line of cross-examination.

Other possible justifications may exist that are not barred by Rule 404(b).  As noted above, under a different theory not going to character or propensity, the Second Circuit has adopted an "inclusionary approach," allowing such evidence to be admitted "'for any purpose other than to show a defendant's criminal propensity,'" as long as it is relevant and not impermissibly prejudicial.  *United States* v. *Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (quoting

---

[6]     Defendant provided the New York Police Department Firearms Discharge Review Board Report of Findings and Recommendations ("Firearms Discharge Report") to the Court for *in camera* review in assessing this motion.

*United States* v. *Harris,* 733 F.2d 994, 1006 (2d Cir. 1984)).  However, even were the evidence

to be offered for a permissible purpose, the Court would nonetheless be obliged to determine that

the evidence was both relevant and not unduly prejudicial.

The standard for relevance, as set out in Rule 401, is quoted above; the standard for

prejudice, as provided by Rule 403, allows a court to "exclude relevant evidence if its probative

value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."  Fed. R. Evid. 403.  "'Unfair prejudice within its context means an undue

tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one.'"  *Old Chief* v. *United States*, 519 U.S. 172, 180 (1997) (quoting the Advisory

Committee's Notes on Fed. R. Evid. 403).  Elsewhere, the Supreme Court explained why the law

excludes all inquiry into a defendant's character or propensity:

> The inquiry is not rejected because character is irrelevant; on the
> contrary, it is said to weigh too much with the jury and to so
> overpersuade them as to prejudge one with a bad general record
> and deny him a fair opportunity to defend against a particular
> charge. The overriding policy of excluding such evidence, despite
> its admitted probative value, is the practical experience that its
> disallowance tends to prevent confusion of issues, unfair surprise
> and undue prejudice.

*Michelson* v. *United States,* 335 U.S. 469, 475-76 (1948).

The Court concludes that Rule 403 precludes introducing evidence of the 2008 incident

even if a permissible basis for admission existed under Rule 404(b). The probative nature of this

evidence is marginal at best, and even that is a generous construction of it; the 2008 incident

could not be adduced to prove intent, opportunity, absence of mistake, or plan.  But more

importantly, such evidence poses the risk of severe prejudice to Defendant.  Plaintiff seeks to

introduce evidence regarding the deadly shooting of a man armed with wooden sticks.  Few past

18

acts pose as great a risk of "inflam[ing] the situation" in exactly the way Rule 403 is intended to

avoid. *Berkovich*, 922 F.2d at 1023.  Most juries would probably find it difficult, if not

impossible, to evaluate Plaintiff's allegations regarding Defendant's conduct during his arrest in

2007 with the same, unbiased perspective after learning of the 2008 shooting.

Accordingly, based both on Rule 404(b) and Rule 403, Defendant's motion to exclude all

evidence of the 2008 incident is granted.  No party shall make *any* reference of any kind to this

incident.[7]

**D.    Defendant May Cross-Examine Plaintiff's Witness Ivan Eli Regarding One, But Not Both, of His Criminal Convictions**

Plaintiff intends to call as a witness Ivan Eli, an eyewitness to the 2007 arrest.  Defendant

seeks to cross-examine Mr. Eli regarding two criminal convictions: a 2002 conviction for grand

larceny in the fourth degree, and a 2011 conviction for grand larceny in the second degree.

Rule 609 permits the introducing of evidence of a criminal conviction to attack a witness'

character for truthfulness.  Rule 609(a) provides:

> The following rules apply to attacking a witness's character for
> truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable
> by death or by imprisonment for more than one year, the evidence:
> (A) must be admitted, subject to Rule 403, in a civil case or in a
> criminal case in which the witness is not a defendant; and
> (B) must be admitted in a criminal case in which the witness is a
> defendant, if the probative value of the evidence outweighs its
> prejudicial effect to that defendant; and
> (2) for any crime regardless of the punishment, the evidence must
> be admitted if the court can readily determine that establishing the

---

[7]   The possibility exists that Defendant might "open the door" to the introduction of this evidence if he
testifies at trial in a manner that makes it fair for Plaintiff to use the evidence in cross-examination. *See
generally United States* v. *Beverly*, 5 F.3d 633, 639-40 (2d Cir. 1993).  For instance, although this seems
unlikely, Defendant could testify in his direct examination that he has never used force of any kind in
connection with making an arrest.  If Plaintiff believes that Defendant's testimony opens the door to the
introduction of this evidence, he may make an application to the Court outside of the presence of the jury
before he cross-examines Defendant.  The parties may not, however, mention the incident in front of the
jury unless and until the Court permits a party to do so.

> elements of the crime required proving — or the witness's
> admitting — a dishonest act or false statement.

Fed. R. Evid. 609(a).  This is a dense rule and may benefit from a brief explanation.

First, the Court concludes that Rule 609(a)(2) is not implicated here.  Defendant does not seek to rely on Rule 609(a)(2), presumably because the grand larceny convictions do not include as an element of the offense any dishonesty or deceit.  However, "[w]ith respect to convictions for larceny," the Second Circuit has "held that [courts should] 'look beyond the elements of the offense to determine whether the conviction rested upon facts establishing dishonesty or false statement.'"  *United States* v. *Estrada*, 430 F.3d 606, 614 (2d Cir. 2005) (quoting *United States* v. *Payton,* 159 F.3d 49, 57 (2d Cir. 1998)).  According to the arrest reports attached to the 2002 and 2011 arrest records, Mr. Eli was arrested in 2002 for using a stolen credit card to purchase an item at a retail store and being in possession of a stolen Palm Pilot, while in 2011 he was arrested for making withdrawals without authority from various bank locations.  Neither of these offenses conform to the "narrow meaning" of "dishonesty" under Rule 609(a)(2) "as a disposition to deceive."  *Estrada*, 430 F.3d at 615 (citing *United States* v. *Brackeen*, 969 F.2d 827 (9th Cir. 1992) (en banc)).  Thus Rule 609(a)(2), focusing on crimes of "dishonesty or false statement," is not invoked here.

Rule 609(a)(1), however, does apply.  This rule applies to crimes punishable by death or imprisonment for more than one year.  That condition is satisfied here: both offenses are felonies, and in New York State a felony is, by definition, a crime punishable by imprisonment for more than one year.  N.Y. Penal Law §10.00(5).  Second, Rule 609(a)(1) applies differently depending on whether the witness whose convictions are sought to be introduced is the defendant in a criminal case.  Mr. Eli is not the defendant, and this is not a criminal case, so Rule 609(a)(1)(A) applies.

Rule 609(a)(1)(A) provides that evidence of past criminal convictions "must be admitted, subject to Rule 403." In other words, performing the same kind of analysis conducted above, the Court must admit such evidence *unless* it determines that the evidence's prejudice outweighs its value as proof.[8] "In balancing probative value against prejudicial effect under this rule, courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels* v. *Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing 4 WEINSTEIN'S FEDERAL EVIDENCE § 609.04[2][a], at 609-20 (1997)).

The first factor — the impeachment value of the conviction — weighs in favor of admitting the evidence. *See Melino* v. *Miller*, No. 9:06-CV-1173 (GTS/DRH), 2010 WL 3081439, at *6 (N.D.N.Y. Aug. 5, 2010) (admitting evidence of grand larceny convictions in part because "stealing is sufficiently related to veracity."); *Williams* v. *McCarthy*, No. 05 Civ. 10230 (SAS), 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007) (same). The second factor counsels for admitting the 2011 conviction, which is "not so remote as to diminish its probative value," *Daniels* v. *Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997), but against admitting the 2002 conviction, as "convictions have more probative value as they become more recent," *United States* v. *Hayes*, 553 F.2d 824, 828 (2d Cir. 1977). The third factor is irrelevant here as Mr. Eli's conduct is not on trial. The fourth factor counsels in favor of admitting the evidence: "because the versions of the events by the parties are radically different, witness credibility will be especially important in this case." *Williams*, 2007 WL 3125314, at *2; *cf. Cummings* v. *Malone*,

---

[8]     A different standard applies when the conviction in question or the witness' release from confinement for that conviction, whichever is later, took place more than ten years ago. Mr. Eli's more recent conviction was in 2011 and he is still serving a sentence of incarceration for that conviction. His earlier conviction took place on June 12, 2002, and he was sentenced to parole with no incarceration; however, he violated his parole, was incarcerated, and was not released until June 3, 2008. Both convictions thus fall within the ambit of Rule 609(a), not Rule 609(b). *See United States* v. *Gray*, 852 F.2d 136, 139 (4th Cir. 1988).

995 F.2d 817, 825 (8th Cir. 1993) (holding, in a civil action for Eighth Amendment violations by alleged beating, that because "the parties' descriptions of the events were diametrically opposed … [t]he entire case thus depended on whose story the jury believed; credibility of witnesses was paramount.").

Accordingly the Court hereby grants in part Defendant's motion to introduce evidence of Mr. Eli's past convictions: Defendant may cross-examine Mr. Eli regarding his 2011 conviction, but may do not do regarding his 2002 conviction.

### E.     More Information Is Required to Resolve Plaintiff's Motion to Cross-Examine Plaintiff's Witness Davon Chambers Regarding His Criminal Record

Finally, Defendant moves *in limine* to question Davon Chambers, another of Plaintiff's witnesses, concerning Mr. Chamber's November 8, 2013 guilty plea to conspiring to distribute narcotics, also pursuant to Rule 609.  The Court will reserve decision on this matter for two reasons.  First, the Court would like to review the transcript of Mr. Chambers' guilty plea, so that it may undertake the analyses required by Rules 609 and 403.  Second, the Court requires additional briefing from Defendant (and, if he wishes to submit briefing, Plaintiff) on the issue of whether Mr. Chambers' guilty plea qualifies as a "conviction" for Rule 609 purposes under the law of the Second Circuit.  *Compare In re Adler, Coleman Clearing Corp.*, No. 95-08203 (JLG), 1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3, 1998), *with United States* v. *Semensohn*, 421 F.2d 1206 (2d Cir. 1970), *and United States* v. *Vanderbosch*, 610 F.2d 95 (2d Cir. 1979).

## CONCLUSION

For the reasons set out above:

1)  Plaintiff's motion to introduce records of his treatment at NewBridge Services is

     DENIED, and Defendant's cross-motion to exclude them is GRANTED;

2) Plaintiff's motion to introduce records of his treatment in Harlingen, Texas, is DENIED, and Defendant's cross-motion to exclude them is GRANTED;

3) Defendant's motion to prohibit Plaintiff from discussing the 2008 shooting is GRANTED;

4) Defendant's motion to introduce evidence of Mr. Eli's past convictions is GRANTED IN PART with respect to the witness' 2011 conviction, and DENIED with respect to the witness' 2002 conviction; and

5) Defendant is hereby ORDERED to obtain and provide to the Court the transcript of Mr. Chambers' November 8, 2013 guilty plea; and

6) Defendant is hereby ORDERED to submit additional briefing regarding whether Mr. Chambers' guilty plea qualifies as a conviction under Second Circuit precedent. Plaintiff may of course also submit briefing on this legal issue if he wishes to do so.

Defendant is hereby ORDERED to send a copy of this Order to Plaintiff via e-mail.

Chambers will send Plaintiff a copy via physical mail.

SO ORDERED.

Dated: December 5, 2013
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

A copy of this Order was mailed by Chambers to:

Victor TR Djangmah
12 Post Lane
Riverdale, NJ 07457

23